Case No. 23-5456 FedEx Ground Package Sys Inc v. Route Consultant Inc Argument not to exceed 15 minutes per side Mr. Krasick, you may proceed May it please the court, Kurt Krasick on behalf of the appellant FedEx Ground Package Sys Inc. I'd like to reserve four minutes of my time for rebuttal. Thank you. Your Honor, we ask this court to reverse and remand because the district court overstepped its proper role in evaluating a motion to dismiss under Rule 12b-6 under the guise of the Twombly-Iqbal standard. This court has made clear that in evaluating the plausibility of a complaint under Twombly-Iqbal, a court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Despite this well-established law, the district court erred in two ways that warrant reversal. First, the district court re-characterized and mischaracterized FedEx Ground's pled allegations against FedEx Ground. Second, the district court repeatedly drew inferences in favor of the appellee Route Consultant and against FedEx Ground. And the net effect of these errors was that the district court credited Route Consultants rather than FedEx Ground's version of the facts. This is the same thing that this court held was reversible error in the Mediacom Southeast LLC v. BellSouth Telecommunications Inc. case, that's 672 F 3rd 398. Counsel, you present a whole bunch of different statements here that you think are actionable. Can you take us to the one that you think is your strongest case that the district court erred? Absolutely, Ron. As you know, the district court analyzed the alleged false statements by categorizing them into different categories. The statements I would first direct your attention to are statements A, B, and H. And with respect to statements A, B, and H, the district court committed multiple reversible errors. First, FedEx Ground pled the actual words spoken by Mr. Spencer Patton, the president of Route Consultant, that we allege are false. But the district court rejected those allegations. FedEx Ground accurately quoted Mr. Patton to have made statements of absolutes. For example, there has been no financial adjustment in any capacity. Those conversations did not result in financial adjustments for the service providers who desperately needed it. And FedEx Ground has not addressed the financial needs of contractors as a result of fuel prices doubling, wage costs going up, and vehicle costs going up. But the district court re-characterized and mischaracterized those very statements. The district court held, and I'm going to quote what she said, In context, however, it is clear that the statements at issue were not intended to suggest that FedEx Ground never granted a renegotiation request or never improved the terms pursuant to which an individual struggling service provider did business. And she goes on. So let me ask then, what is the case law about whether we look at statements as kind of a narrow snippet or in context, as the district court did? Well, absolutely the court is entitled to look at the context of a statement in determining its plausibility. What the district court cannot do is reject the pled allegations and make inferences, make reasonable inferences against the plaintiff, against those allegations. And that's what the district court did here. She purported to use context to rewrite what he said, but you have to look at what she used context to do. She used context to say what Mr. Patton's statements were intended to mean. Can you explain how those statements are unambiguously deceptive? Isn't that what you have to plausibly allege? Your Honor, I think we can survive a motion to dismiss in two ways. That the statements are literally false, or that they are deceptive and likely to mislead a significant portion of the intended audience. Here, the entire analysis was under literal falsity. There was no suggestion of deception. So what I think we had to prove and what the district court got wrong was that the statements were unambiguously, literally false. As to statements A, B, and H, I just want to be clear. Are you saying that those statements are literally false, or are you saying they're misleading? No, I'm saying they are literally false. Okay. Yes. And so how are they unambiguously deceptive? Well, they're unambiguously, literally false in our estimation because we allege that it is not true that FedEx Ground never agreed to any renegotiation request or changed the terms of any contracts pursuant to those renegotiations. And why so? Don't we say for something to be literally false it must be unambiguously deceptive? Isn't that how we characterize the sort of literally false problem? Well, I'm glad you raised that, Your Honor. As you probably saw, I was counsel for the lead defendant in that case, so I know it well. And Wysong has several key differences that make it inapposite here. And the first one is what Your Honor just pointed out, that in Wysong this court's decision rejected literal falsity. So having rejected literal falsity, the court went on to the plaintiff's second argument, which was that the statements were not unambiguously false but deceptive. So the whole context, the whole rubric of Wysong doesn't apply here because, as I said, the district court only analyzed these statements under the literal falsity problem. If I could also add, Wysong That's what you're asking us to do, right? I mean, that's why I keep asking, which one are you saying, misleading or literally false? So you're asking us to analyze under literal falsity? Literal falsity, yes. The literal falsity we look at still in context? Yes. Okay, so I'm a little bit of an in-the-weeds person, so I would love to go through some of these statements that you actually asked us about.  Okay, so Statement A, always good to start at the beginning of the alphabet. We have an entire paragraph about how FedEx ground during the COVID-19 pandemic. They offered a flat across-the-board six-month compensation increase for its contractors in order to overcome the extraordinary conditions of that year. And then we say the statement that you're pointing out, which is at the end of the paragraph there. The changes experienced over the past 12 months, though, are magnitudes greater than what CSPs experienced in 2020, right, the COVID pandemic. Yet there has been no financial adjustment in any capacity. Why? I mean, you want us to read any capacity or no financial adjustments as if FedEx has literally done nothing. But in context, aren't we talking about they haven't done something like the 2020 adjustments? I mean, that's what the entire paragraph is about. And that is an inference that could be drawn. The problem is it's not drawn in favor of the plaintiff here. I mean, if we get into discovery... So reasonable inference in reading this whole paragraph is that FedEx has not done one tiny thing for any CSP ever in this period. That's a reasonable inference after reading a paragraph about broad across-the-board COVID adjustments. I think that that part of the drawing reasonable inferences is looking at the complaint as a whole and what our claim is. And if you look at the other allegations of the complaint that allege that Root Consultant was the industry leader in providing consulting services to these service providers and that Mr. Patton launched this campaign against FedEx Ground to make it appear as if the network of service providers was in financial peril and FedEx Ground was unresponsive to their concerns and that Root Consultant did that to create a fictional crisis to drive business to Root Consultant. And they did so by calling for contractors to take joint actions like collective bargaining, group boycotts and position themselves in the middle of that. I think, Your Honor, that that context that the district court ignored needs also to be considered. So that they're sneaking in more inflammatory and more absolute statements that we have to read in a much bigger context? Is that the idea? I'm just trying to understand your argument. I think when you talk about what was the context of the statement, this was the context of the statement. Gotcha. So I think you can't so narrowly view it as that paragraph of that letter. But according to our allegations, which must be taken as true and the reasonable inferences from them, the entire context was this plan, if you will, of Root Consultant to create a crisis so they could benefit from solving the crisis. Would you like me to go on to Statement B or more generally? I'm going to defer to my colleagues or counsel as to what you would like to point as your next, I would assume, next strongest statement. Sure. Well, I'd like to make another point about her analysis of Statements A, B and H, which is that ultimately, after first recharacterizing and mischaracterizing the statements by saying what Mr. Patton supposedly intended to mean, which, by the way, you can't determine intent without discovery. So that was a particular issue on which you can't determine context or the context of intent from a letter. But secondly, eventually, the district court acknowledged that Statements A, B and H, as actually pled by FedEx Ground, could reasonably be read to be technically false. So to answer your question, Judge Mathis, she acknowledged that they were literally false. And there are significant consequences that come from that acknowledgement. First of all, it confirms that the district court was drawing inferences in its recharacterization of the allegations initially, and those inferences were drawn against FedEx Ground. So we have effectively an admission that the district court was drawing inferences against the plaintiff, which she can't do. But having acknowledged that Statements A, B and H could reasonably be read to be technically false, that should have been the end of the district court's inquiry because as this court knows, under the American Council of Certified Podiatric Physicians case, which generally is recognized to have set forth the elements in this circuit, where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Actual deception is presumed. But ignoring, this is the second part of the district court's error here, ignoring that legal presumption, the district court compounded its error by finding it is quote-unquote unlikely that the statements would have deceived a substantial portion of the attended audience because they were... I think we're out of time, so you'll have your full rebuttal time. Thank you. May I finish the quotes? I can pick it up. Finish on... Okay, thank you. Because there were sophisticated participants in the industry... On rebuttal, you can... Oh, I'm sorry. I misunderstood. Good morning. May it please the court. My name is Brian Neal. I'm a member of the Nashville Bar. I'm pleased to be here before you. Nashville, Tennessee. I know there's other Nashvilles. They cited to Wysong. It features prominently in our briefs. I'm going to start there. Context matters when a district court is determining whether to grant a Rule 12b6 motion with regard to Lanhamette case. The context here was provided by us via the exhibits. I believe you reviewed Judge Bloom-Katz. The context is on July 20th, 2022, our client, Mr. Patton, the owner of Route Consultant, who also owned ISPs. That's pretty clear in the record, too. He owned seven of these ISPs. He owned this brokerage business. He wrote a letter to FedEx that references at the beginning 1,000 ISPs have recently written a letter to FedEx asking for a raise. I'm going to make a specific ask in my letter. I'm going to ask for FedEx to do two things. I'm going to ask for FedEx to recognize that we are in financial distress, thus the ISPs, because our costs have gone up. Fuel prices have gone up. Wages have gone up. The cost of truck acquisition and maintenance has gone up. When we talk about context, Matt, they're saying it's not just what's in their correspondence, but essentially what Route Consultants was trying to do, which is to end up business for their company. So is that part of the context as well? That's their allegation. That's what he's trying to do. I don't believe that's apparent from this at all. In this letter, for instance, he's making an ask for a classified adjustment of 50 cents per package. In that letter, the difference between him and the 1,000 CSPs is I want a 50 cent per package increase for a temporary time. This is just like you did in 2020 for us during COVID. We need it again. That was 25 cents. That's his specific ask. I think contextually that's what he's asking for in that letter. They have said and asked you to infer that, no, this is part of some fictionalized crisis to drive business to him. We argued that this wasn't commercial speech. The court didn't decide on that ground. No evidence was taken in this case. It's strictly on the pleadings, right? That is accurate. But the context that we provided, there's 230 pages of context for you to review. They referenced that letter. They referenced four videos. They cited to 10 statements they alleged offended the Lamb Act. We're down to eight now. I think that's clear from the record. They dropped G and they haven't referenced J at all, which was the last one in fairness to them. J was not really part of it in the complaint. The judge picked it up in case it was part of it because it's in the pleadings. Because the documents, the letter, the videos were referenced in the complaint, there's no dispute that we can look at the full context, the full 230 pages of stuff that I'm reading. That's correct. There's certainly no argument that you can't review it. I don't believe it's improper for it to be before the court. They haven't argued it, so it would be waived if it is. I think it's proper. Also, the district court noted in these 10 statements that they cited to, they didn't say where it came from, right? They didn't say this one came from the letter, this one came from the second video, this one came from the third video. The court, we had to try to triangulate that. So you have to go in and find it within that context. But to answer your question, Judge Seiler, there was no evidence taken. There was no discovery in this case. But you do have, and I think this is unique in this case, you do have an abundance of context compared to a very narrow complaint. Most of these cases I reviewed, you have a refining, a fine-tuning of the complaint, right? You get a motion to dismiss. You may just voluntarily amend, or you get an order from the court. You refine it a bit, and by the time it comes to you, you have multiple versions of the complaint. You have a more fine-tuned, at least to certain arguments, complaint. Here they asked for and received the opportunity to amend and didn't do it. You have a narrow complaint, and they chose to go narrowly in their causes of action. They went with the Lanham Act and the Tennessee Consumer Protection Act. The same analysis applies to both, and one of us argues that. So you basically have one cause of action. You've got to run through this rubric of Rule 12. I'm sorry, go ahead. No, no, go ahead. I was just going to say, can you go to A, B, and H, which is what they say are their strongest points, and I think those are the ones that the district court suggests were literally, not literally, but technically false. Does that satisfy the literal falsity as is mentioned in Wysong and American Counsel in those other cases? Yes, I will address those, Judge Mathis. First, I think it's unfair to characterize the judge as saying that these were literally false. If you read her opinion, she goes through a detailed analysis, I would submit, with regard to each of the statements, but on this she starts with, I don't believe this is even a fact, and then sets forth the reasoning. But if it is a fact, then you haven't shown me, for instance, the fact would be that fuel costs are rising or something along those lines. You haven't pled that the fuel costs are indeed not rising. But assuming the literal falsity, then she goes on to say, this doesn't link in with your damages claim. I can't understand how a difference, a distinction between zero adjustments and a minor set of adjustments would be material to your damages claim. So the judge didn't just say literal falsity, therefore X. She goes through, it's layered. She does what I believe she needs to do under Iqbal Trombley. She reads it in context, applies it. But I'll go through these statements. Let's look at H, if you would with me. In context, H appears at Exhibit B-5 to our motion to dismiss, a stack at entry number 17-6. What FedEx put in the complaint was, FedEx ground does not address the financial needs of contractors. As a result of fuel prices doubling, wage costs going up, and vehicle costs going up. Is that statement false? It is not false. They've alleged it's false. They had a tagline in there that says, all false. That's how they allege it's false. And under Iqbal Trombley, she could disregard that conclusory naked allegation. And then she goes on to say, you haven't told me if fuel prices went up or down. And offers them the opportunity to move. They don't. But in context, where this comes from, and this isn't even in the opinion, this is a hypothetical. He says, what I've been trying to be vocal about, is I don't want a massive contract of failure, that's the ISPs, as a result of some... because FedEx has not addressed the financial needs of ISPs, because our fuel prices have gone up. It's a hypo. And they pulled out the last part of it, and displayed as fact, and say this is false. Now, that's the context of many of these statements. That might be my best example, that's maybe why I went with it. But A and B are not much different than that. Right? Can I ask you, counsel, about some outside of A, B, and H, and particularly to your friend's argument, that we really need to be looking at the reasonable inferences in favor of the non-moving party here, and in favor of FedEx. And sometimes, as the district court is going through, the district court is saying, well, the statement is about profits, and we only have evidence from FedEx about revenues, or the surveys that were done were about all ISPs, and the statements are only about... or all CSPs, and the statements we have about our ISPs. I'm probably confusing those, excuse me. But even if the facts that FedEx has put forth in the record don't entirely kind of match to falsify something, directly, shouldn't we reasonably make reasonable inferences from those facts? That seems to be your friend's argument. I do see in the briefing that they said there's no requirement in them to make a direct correlative, right? That if I allege that it's false to say fuel prices are going up, there's no corresponding duty on the claimant to say fuel prices, in fact, went down, or didn't go up, right? I think that's fair. I don't think there is a direct correlation between I have to affirmatively deny each of these statements as a pleading claimant. I don't think it qualitatively requires that. It requires something. It has to be plausible, at minimum. So take C, right? The average FedEx ground business run by a CSP currently operates on profit margins below 0%, okay? And the district court, if I recall, is telling us, well, FedEx is rejoinders about revenues of CSPs, not profit margins like across the network. But should we take reasonable inferences, or is there even a reasonable inference to make that the district court wasn't making? I submit the district court did exactly what it needed to do and it evolved fondly on that one. It says statements C and D contain a qualitative assertion that could in fact be, you know, rendered false. But the complaint never actually pleads that's the case. Other than saying all false, they don't say anything about, for instance, operating margins, right? And this is about the ISPs. She goes on in part of this layered approach to say that they know whether their businesses are making money or not. They know whether their costs have gone up. Now, they're saying that's unfair. If you just go with literal falsity, then you need to assume that they're deceived, right? I think that's part of what the argument is here. If I have literal falsity, then this how are they going to receive it is not relevant. But she didn't go to literal falsity. I would submit. She says... Well, not on C, but yeah. Yeah, but she says, I don't have any contra point from you, really. And the question is here, and I think she's aware of it, it was in the complaint, that, well, revenues have gone up. Well, in context, Mr. Patton's complaints over and over again are not about he needs more revenue, yes, but he is saying our costs have gone up exponentially, our fuel costs have gone up. We are not profiting. And there's another one of these statements in here that is an answer to a question from a CSP saying, I've asked for renegotiation of FedEx. I am now operating at 9% deficit. What should I do? And they pull out a sentence in his answer to that ISP and say, you know, all false again. This is in context. He is answering questions. He's responding and trying to get a raise in revenues. That's what this is. And what happened to him was they took his business from him and filed this Lanham Act claim. But on C and D, to answer your question, I contend the district court didn't just say all false. She says, I don't have anything contra to it in the complaint. And I hope I'm answering your question about is it a reasonable inference, and I don't believe it is. Regardless, she gave them a road map on how to fix it, said what she needed, and they didn't amend. Does FedEx, and this is probably a better question for your friend, but does FedEx know the profit margins of the CSPs? Like is that something that, you know, they could have run a table, done something mathematical that's well beyond my understanding, but like actually been able to say what the profit margins are of an average CSP? It's fair. I think it's outside the record. But answering it, I don't know. Our contention in the- I don't understand as much how the industry works beyond what you both told us in your briefing. But in our context, we're saying a thousand of them had written to say they needed to work raising revenues. I think if that's in context and before the court, they certainly knew they were asking for something. And then there's others here, statements, E and F, the court kind of summarily dealt with financial models collapsing, soaring levels of default rates. She says that's loose hyperbole primarily, right? That soaring, this isn't a statement of fact, which can be rendered false as a matter of characterization. And also says there's really nothing in the complaint about what the default rates are. There's no contra point from the plaintiff for me to assess, right? I can deal with those or any more you have. I know there was considerable briefing on G. There's quibbling in the briefs about them choosing or electing not to appeal or present to you statement G. They say we're trying to exploit it and say it's a concession. But I haven't overstated that. What I'm trying to say is that paragraph 41 of the complaint, they say the linchpin, the linchpin of my client's fictionalized crisis here is against campaigners' false assertion that ISPs are generally financially collapsing under the weight of the cost, right? If they concede, I am calling for FedEx Ground to recognize that its independent contractors are in financial distress. We think that's important. If it's not actionable, if they're not presenting it here, it's in the context. It's something we said. It was in the complaint. A lot of these others fall away in our opinion, right? If that's okay for him to say, at least at this stage, a lot of these follow from that. They even call it the linchpin of his presentation to these ISPs. Does the panel have any further questions for me? We will rest on our briefs. Thank you. May it please the Court, I'd like to start where I left off. I'd like to start where I left off, which was with statements A, B, and H, and the second level of error by the District Court. And that was as she acknowledged that these statements were technically false. Number one, that should have been the end of the analysis because deception is then presumed under American counsel. However, where I left off was to say she compounded her errors by finding that it is quote-unquote unlikely that the statement would have deceived a substantial portion of the intended audience because they were sophisticated participants in the industry capable of understanding FedEx's approach. There is nothing in FedEx's complaint from which an inference could be drawn that these service providers are sophisticated participants in the market. That finding was made out of whole cloth. And in our view, that again demonstrates that the District Court erroneously drew inferences in favor of Root Consultant and against FedEx Ground. I'd like to point out, Appley's counsel made the comment at one point in response, I believe, to Judge Blumenkatz's question that these contractors know their business, so they know if they're making money or not. But again, that ignores the context of our allegations as a whole. What we allege is that Root Consultant is the one that holds themselves out as the experts in the industry. These consultants pay them tens and thousands of dollars for these seminars and courses and trainings in order to gain that knowledge. And the contractor's knowledge is limited by contract to their own business. They are contractually prohibited under their contracts from taking joint or collective positions in negotiations with FedEx Ground. So they don't know what's going on with other contractors. That's in part why they relied so much on Root Consultant here. If I could now pick up on one thing Appley's counsel said in response, I believe, to Judge Mathis's question. He admitted that our allegations were that Root Consultant engineered this fictionalized crisis to gin up business for themselves. He said, I believe his response was, that's their story. We have a different story. Well, with all due respect from our position, we think that admits the reversible error here. There are two stories. The district court was required to accept the plaintiff's story and not the defendant, Appley's, story. And that poignantly demonstrates the error here. In fact, that's the exact same thing that this court found was reversible error in the Mediacom and Handiclay cases. And in fact, in their briefing, the Appley's rely on a different case, 16-630 Southfield Limited Partnership v. Flagstar Bank, 727F3-502. In that case, the court did consider alternative explanations for the facts and under the facts of that case ultimately found that the plaintiffs dismissed the plaintiff's case under 12b-6. But what's important is that this court said that if a plaintiff's claim is plausible, the availability of other explanations, even more likely explanations, does not bar the door to discovery. Yet that's exactly what the district court did here. The district court found that the defendant's story, Lukenson's story, was more plausible in her estimation and therefore she rejected FedExGround's story. She couldn't do that. If I could pivot now to Statement 6. Judge Bumacats, I think your questions were exactly on point and demonstrate another example of the error here. If I could just finish my answer. That is that the district court said we didn't present corresponding allegations of falsity. That's not true, specifically with respect to Statement C. She rejected the allegation in Paragraph 72 that a third-party industry analyst concluded in August of 2022 that ISP businesses were generating operating margin of 16%. She rejected that because she said that analysis was based on only 100 contractor business and wasn't necessarily the average service provider. Well, again, that's an inference she's drawing against FedExGround and in favor of Lukenson. That very well could have been the average service provider operating margin. She wasn't free to reject that allegation, but she did. Thank you, Counsel. Thank you. Thank you all for your arguments and briefs, your accounts. Thank you.